UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KELLI SHINN, Individually and
as Personal Representative of
the Estate of Destini Shinn,

      Plaintiff,

vs.                                                                              Case No. 09-13799

DETROIT PUBLIC SCHOOLS,                                   HON. AVERN COHN
STEVEN D. ARTT, and VIVIAN
HAWKINS WASHINGTON,

      Defendants.

_____/

## MEMORANDUM AND ORDER
## GRANTING DEFENDANT ARTT'S MOTION FOR SUMMARY JUDGMENT
## AND
## DENYING DEFENDANT VIVIAN HAWKINS WASHINGTON'S MOTION FOR
## SUMMARY JUDGMENT
## AND
## DIRECTING PLAINTIFF TO FILE A SUPPLEMENTAL PAPER WITHIN 15 DAYS
## REGARDING HER GROSS NEGLIGENCE CLAIM AGAINST HAWKINS
## WASHINGTON

I.  Introduction

This is principally a civil rights case under 42 U.S.C. §1983.  The Court has

described its essence as follows:

> Plaintiff [Kelli Shinn] alleges that defendants' wilful misconduct was the proximate
> cause of her daughter Destini Shinn's death.  Defendant [Vivian Hawkins]
> Washington was employed in the Detroit Public School's [Moses] Field School as
> a paraprofessional educator working with special needs children.  Washington
> had a history of abusive and inappropriate conduct toward special education
> students that preceded the events in question.  Defendant [Steven D. Artt] was
> principal of [Moses] Field School.  On or about April 29, 2008, Washington
> reportedly shoved Destini Shinn to the ground where she subsequently hit her
> chin and began having a seizure.  Artt was contacted immediately but made no
> effort to get Destini Shinn medical attention, nor was an incident report filed.
> Destini Shinn was sent home early and plaintiff was not informed of any

misconduct.  Thereafter, Destini Shinn suffered from increased seizures, and on or around May 3, 2008, died from one such seizure.

See Order Regarding Pending Motions, filed September 8, 2010, at p. 1 (Doc. 23).

The complaint pleads multiple counts, as follows:

| | | |
|---|---|---|
| I. | Assault and battery as to Hawkins Washington |
| II. | Intentional infliction of emotional distress as to Hawkins Washington and Artt |
| III. | Gross negligence as to Hawkins Washington and Artt |
| IV. | Breach of statutory duties under Child Protection Act, M.C.L. § 722.621 against Artt |
| V. | Violation of 42 U.S.C. §1983, 4th and 14th Amendment as to Hawkins Washington and Artt |
| VI. | Violation of 42 U.S.C. §1983: Supervisory Liability as to Artt |
| VII. | Violation of 42 U.S.C. §1983: Equal Protection as to Hawkins Washington and Artt |
| VIII. | Violation of 42 U.S.C. §1983 as to Detroit Public Schools District |
| IX. | Violation of Individuals with Disabilities Act, 42 U.S.C. §1983 against all defendants |
| X. | Wrongful death |

Plaintiff has voluntarily dismissed the Detroit Public Schools as a defendant.  The following dispositive motions are now before the Court:

Hawkins Washington's Motion to Dismiss and Motion for Summary Judgment (Doc. No. 16)

Artt's Motion to Dismiss and Motion for Summary Judgment (Doc. No. 18)

Defendants' motion papers are voluminous, including a statement of material facts not in dispute running 95 paragraphs and multiple exhibit books.  In an effort to make manageable plaintiff's response to the motions for summary judgment, and better

2

focus the case, the Court held a status conference with the parties on September 1,

2010.  After which the Court directed plaintiff to file the following:

> a statement of the material facts relating to her claims in separately numbered paragraphs in non-argumentative form which establish her right to relief.  These material facts shall state actions of Artt and Washington which give rise to each's separate liability for the death of Destini Shinn, including how the actions of each on April 29, 2008, were the proximate cause of her death on May 3, 2008.

> a statement of the law applicable to the material facts which support the liability of Artt and Washington under each count of the complaint.

Defendants were given an opportunity to respond and plaintiff could reply.  See

Order Regarding Pending Motions at p. 3.  These papers have been received.  Most

notably, plaintiff has withdrawn the claims against Artt except for a § 1983 supervisory

claim (Count VI).  She has also withdrawn the following claims against Hawkins

Washington:  Count IV, Count VIII, Count IX.

Thus, the following claims remain for purposes of defendants' motions:

I.    Assault and battery as to Hawkins Washington

II.   Intentional infliction of emotional distress as to Hawkins Washington

III.  Gross negligence as to Hawkins Washington

V.    Violation of 42 U.S.C. §1983, 4th and 14th Amendment as to Hawkins Washington

VI.   Violation of 42 U.S.C. §1983: Supervisory Liability as to Artt

X.    Wrongful death

The motions are ready for decision.  For the reasons that follow, Artt's motion will

be granted and Hawkins Washington's motion will be denied.  Plaintiff is also directed to

file a supplemental paper regarding her gross negligence claim, as will be explained.

II.  Background

The Court has described the essential facts above.  Additional facts follow.

Plaintiff is the mother and duly appointed Personal Representative of the Estate of the decedent child Destini Shinn ("Destini").  Destini, at the time of her death, was 9 years old.  Destini was born with cerebral palsy and diagnosed early on as suffering from epileptic seizures.  Destini was born at home with the umbilical cord wrapped around her neck, impeding her ability to breathe.  Destini's seizures resulted in multiple hospital visits during her life.  For example, during the months of January and March of 2008, Destini was taken to a local children's hospital for an increase in the frequency of tonic-clonic seizures.

On or about April 22, 2008.  Destini enrolled in the Moses Field School, a Detroit Public School.  Moses Field School's student population consist of children with the following four (4) categories of disabilities: (1) moderately cognitively impaired, (2) severely cognitively impaired, or (3) autistic impaired with developmental disabilities and (4) severely multiply impaired.  To accommodate the students, the school has nearly two dozen special education teachers, three full-time nurses, dozens of paraprofessionals, one physical therapist, three speech therapists, three occupational therapists, an Art teacher, a Gym teacher, a social worker, several transportation nurses and an administrative staff.  In addition to paraprofessionals, the school staff also includes school nurses who are assigned to the school to handle the medical needs of children.  It also includes transportation nurses who ride the school buses which bring special needs children whose health status is considered medically fragile.

The school staff was not familiar with Destini's condition beyond the one or two

4

days that she had been at the school.  The only information about Destini came from intake data received from her mother and prior IEP information generated as a result of her prior schooling.  The intake data indicated that Destini had an "unsteady gait" while running, but she could sit, stand, and walk without assistance.  The intake form also indicated that Destini wore a protective helmet.

Destini was assigned to Sharon Baskin's ("Baskin") class.  Hawkins Washington was the paraprofessional assigned to work with Baskin's class.  School records show Destini attended school on Wednesday, April 23, 2008 and Thursday, April 24, 2008. Destini was absent Friday, April 25, 2008.  School was not in session on Monday, April 28, 2008.  On Tuesday, April 29, 2008, Destini suffered a seizure, the particulars of which will be further explained below.  She returned to school on the next day, Wednesday, April 30, 2008 but did not return to school thereafter.  Thus, Destini attended school only three days before the date of the incident.

Due in large measure to the physical disabilities, a good many of the children arrived at school via bus transportation provided by the school.  The buses were divided into two groups: (1) medically fragile and (2) non-medically fragile.  The school's staff paraprofessionals were generally responsible for greeting the children when they arrive.  The paraprofessionals assist children disembarking from the bus and escort children to their classrooms.  Paraprofessionals were assigned to meet particular buses based upon the children's class assignment.

Destini rode on a medically fragile bus because of her severe epilepsy and mental challenges.  Each medically fragile bus included a nurse.  In Destini's case, she rode the bus with Nurse Karen Simmons ("Simmons"), who carried the necessary

5

medication if Destini should have a seizure.

On the morning of Tuesday, April 29, 2008, a medically fragile bus arrived with Destini, Simmons and other unidentified student(s) at the school's Sheridan Street entrance.  Either Simmons or the bus driver assisted Destini from the bus.  At some point, Hawkins Washington approached Destini and assisted in taking her to her classroom.  As explained in more detail below, one witness saw Hawkins Washington push Destini from the bus to the school building.  Once inside, witnesses heard Hawkins Washington say "I never like you" to Destini while shoving her into a chair.  When Hawkins Washington told Destini to get up and she did not, Hawkins Washington pushed her, causing Destini to fall on the floor and hit her head.  Destini then suffered a seizure.  School officials responded and Destini was sent home.  As noted above, Destini returned to school the next day, but not thereafter.

A few days later, on May 3, 2008, Destini was found unresponsive in bed and transferred to a local hospital where, despite resuscitative efforts, she was pronounced dead.

Defendant Steven Artt ("Artt") was the principal at Moses Field School; he started at the school in the 2005-2006 school year.

### III.  Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion.  Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see Anderson, 477 U.S. at 249–50.

IV.  Analysis

A.  Claim Against Artt - § 1983 Supervisory Liability

1.

Plaintiff makes a single claim against Artt for violation of § 1983 based on supervisory liability for the actions of Hawkins Washigton.  It is well established that respondeat superior is not a proper basis for liability under § 1983. McQueen v. Beecher Cmty. Schs., 433 F.3d 460, 470 (6th Cir.2006).  "Nor can the liability of supervisors be based solely on the right to control employees, or simple awareness of employees' misconduct."  Id. (internal quotations omitted).  "In order for supervisory liability to attach, a plaintiff must prove that the official 'did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on.' " Loy v. Sexton, 132 F. App'x 624, 626 (6th Cir. 2005) (unpublished disposition) (quoting Bass v. Robinson, 167 F.3d 1041, 1048 (6th Cir. 1999).  In other words, liability under Section

1983 must be based on more than merely the right to control employees.  Polk Co. v. Dodson, 454 U.S. 312, 325-26 (1981); Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658 (1978).  A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct.  See e.g., LeachHays v. Jefferson, 668 F.2d 869, 874 (6th Cir.), cert. denied, 459 U.S. 833 (1982).  See also Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir.), cert. denied 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. See e.g. Leach v. Shelby Co. Sheriff, 891 F.2d 1241, 1246 (6th Cir.1989), cert. denied, 495 U.S. 932 (1990).  However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct.  Leach, 891 F.2d at 1246.  Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable.  See e.g. Gibson v. Foltz, 963 F.2d 851, 854 (6th Cir.1992).  In addition, plaintiff must show that defendant had some duty or authority to act.  See e.g., Birrell v. Brown, 867 F.2d 956, 959 (6th Cir.1989.  Merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. See Shelly v. Johnson, 684 F.Supp. 941, 946 (W.D. Mich. 1987), aff'd 849 F.2d 228 (6th Cir. 1988).  Finally, supervisory liability claims cannot be based on simple negligence.

8

Leach, 891 F.2d at 1246; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989),

aff'd 915 F.2d 1574 (6th Cir. 1990).

2.

Here, plaintiff's claims against Artt are based on his alleged failure to train,

discipline or supervise Hawkins Washington.  It is undisputed that Artt was responsible

for ensuring that all staff at the school, including Hawkins Washington, performed their

jobs appropriately and had the authority to issue written reprimands and recommend

further disciplinary action,

In support of her claim against Artt, plaintiff says that the record shows Artt knew

of Hawkins Washington's inappropriate behavior toward other special needs children

and chose to take no action.  The record, however, fails to support plaintiff's factual

assertion.

Prior to Destini's incident, Artt received a number of oral complaints about

Hawkins Washington from Baskin who never reduced any complaints to writing

nor was willing to meet to confer about her oral complaints as per Detroit Public School

("DPS") requirements, to initiate any disciplinary action against Hawkins Washington.

Moreover, all of these complaints pertained to Hawkins Washington's interaction with

Baskin.  Baskin did not make a complaint about Hawkins Washington to Artt of abusing

any child in Baskin's presence.  Although Baskin testified at deposition that she

suspected Hawkins Washington of engaging in behavior toward other special needs

children but these suspicions were never conveyed to Artt or any DPS official with the

authority to handle the matter.

As to Destini, Baskin testified at deposition that Hawkins Washington "abused"

9

Destini during the days Destini attended the school by "talking loud and saying mean things to Destini like "I hate you" or "you are spoiled."  At no time did Baskin ever report the alleged abuse by Hawkins Washington toward Destini to Artt or any DPS official with the authority to handle the matter.  Baskin also testified that she never saw Hawkins Washington hit a child or use corporal punishment against a child.

Baskin also testified that the day after the seizure when Destini returned to school, Hawkins Washington talked loud to Destini in a manner offensive to Baskin; however, Baskin did not lodge a complaint with Artt.

Moreover, a review of Artt's affidavit and deposition testimony establishes the following.  His involvement in the incident was limited to observing the aftermath of Destini's seizure and initiating an internal investigation after receiving reports from some staff members indicating more to the situation than just a mere seizure.  On the date of the incident, he was in his office and was notified that a student was having a seizure in the hallway.  He went to that location and learned the student was Destini.  He witnessed the presence of the school's medical staff, who appeared to have the situation well in hand.

Later, either that day or thereafter, Baskins and Linda Baynes ("Baynes"), a school nurse, neither of whom saw the pre-seizure activity between Destini and Hawkins Washington, came to Artt's office and advised that the seizure incident involved more.  They advised that other staff members had told them that Hawkins Washington had pushed the child prior to having the seizure.  Upon learning of these allegations, Artt requested those staff members who apparently witnessed Hawkins Washington's actions to prepare written statements of what they saw.  Artt also asked

and received a statement from Simmons, the medically fragile nurse who was responsible for Destini, to prepare a written report.

By approximately May 13, 2008, Artt received statements from paraprofessionals Carolyn Camp ("Camp"), Courtney Ruff-Kern ("Ruff"), and Darlene Rakestraw ("Rakestraw").  On or about that date, he also received a statement from Hawkins Washington.  Artt also prepared two written statements about the incident.  He then forwarded the packet of information including all statements to the Office of Employee Relations which then advised him to notify Hawkins Washington of the allegations and administrative leave status.

On May 14, 2008, Artt notified Hawkins Washington of the allegations in writing. The notification also informed her that she was suspended with pay and placed on Administrative Leave with Pay pending the outcome of the investigation.

On May 20, 2008, Artt also received two statements from Baskin who only witnessed the aftermath of the incident (i.e. the tail end of the seizure).

On or about May 14, 2008, DPS officials initiated an investigation of the claim of misconduct against Hawkins Washington.  A hearing was held on June 9, 2008 at which Artt was present.  At that point, Artt no longer had authority over the matter.  The hearing officer recommended termination.  Hawkins Washington was eventually terminated effective August 20, 2008.

3.

Considering the above, plaintiff has not established a genuine issue of material fact that Artt has liability under § 1983.  Rather, the record shows that Artt was never informed specifically about any inappropriate behavior concerning Hawkins Washington

11

and students prior to the incident.  While Baskin may has raised concerns about Hawkins Washington with Artt, Baskin admitted she had no proof that Hawkins Washington engaged in inappropriate behavior; she only suspected it.  When Artt was informed of the possibility that Hawkins Washington may have pushed Destini, he took all necessary and appropriate steps to investigate.  He turned the investigation over to DPS officials who ultimately made the decision to terminated Hawkins Washington's employment.  Artt is entitled to summary judgment on plaintiff's claim under § 1983.

B.  Claims Against Hawkins Washington

1.  Federal Claim - § 1983 Substantive Due Process

a.

Section 1983 provides that one who, under color of state law, deprives another of the "rights, privileges, or immunities secured by the Constitution and laws, shall be liable" for damages.  Thus, the threshold inquiry for bringing a claim under section 1983 is "whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.' " Baker v. McCollan, 443 U.S. 137, 140 (1979) (citation omitted).  As the Supreme Court explained in Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), the Due Process Clause of the Fourteenth Amendment bars "certain government actions regardless of the fairness of the procedures used to implement them." Id. at 331, 106 S.Ct. at 665.  This is "the concept embodied in the phrase 'substantive due process,' " Lewellen v. Metropolitan Government of Nashville, 34 F.3d 345, 346 (6th Cir.1994), cert. denied, 513 U.S. 1112, 115 S.Ct. 903, 130 L.Ed.2d 787 (1995), and this is the general theory underlying plaintiff's § 1983 claim under the 14th Amendment.  The claim is premised on the alleged violation of a constitutionally

12

protected liberty interest, within the meaning of the Fourteenth Amendment, in Destini's personal bodily integrity, which is entitled to protection. See Ingraham v. Wright, 430 U.S. 651, 673-74 (1977).

To state a cognizable substantive due process claim, plaintiff must allege "conduct intended to injure in some way unjustifiable by any government interest" and that is "conscience-shocking" in nature. Lewis, 523 U.S. at 849; see Stemler v. City of Florence, 126 F.3d 856, 869 (6th Cir.1997); Lewellen v. Metro. Gov't of Nashville & Davidson County, 34 F.3d 345, 350-51 (6th Cir. 1994). The Court of Appeals for the Sixth Circuit has further elaborated that a plaintiff must show that "the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." Webb v. McCullough, 828 F.2d 1151, 1158 (6th Cir. 1987).

Moreover, plaintiff must show a causal connection between the conduct and the injury. The Supreme Court has stated that " § 1983 'should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions.' " Malley v. Briggs, 475 U.S. 335, 345 (1986) (quoting Monroe v. Pape, 365 U.S. 167, 187(1961)). Relying on this language, "courts have framed the § 1983 proximate-cause question as a matter of foreseeability, asking whether it was reasonably foreseeable that the complained of harm would befall the § 1983 plaintiff as a result of the defendant's conduct." Powers v. Hamilton County Public Defender Com'n, 501 F.3d 592, 608-09 (6th Cir. 2007).

b.

Hawkins Washington argues that her conduct does rise to the level of shocking the conscience and plaintiff cannot show causation.  As to shocking the conscience, although Hawkins Washington[1] denies shoving Destini to the ground and maintains the physical contact she had with Destini was appropriate given her condition and unsteady gait, the Court finds otherwise.  Witnesses to the incident include Courtney Ruff-Kern ("Ruff"), a paraprofessional, and Darlene Rakestraw ("Rakestraw"), a paraprofessional who is now deceased.  Both gave written statements about the incident.  Ruff also testified at deposition.  Rakestraw says in her statement that she saw Hawkins Washington push Destini.  Ruff says she saw Hawkins Washington pulling on Destini while Destini was leaning away and let go of her, causing Destini to fall and hit the chair, then the floor.  Another witness, Camps said that she heard Hawkins Washington yell at Destini, staying "You know I don't like you anyway," before she heard a loud noise hitting the floor and then turned to see Destini.  Camps also said Hawkins Washington continued to yell at Destini while she was on the floor.  Barbara Nance ("Nance") also says she saw Hawkins Washington's hand on Destini and heard her say "I never liked you anyways" before she fell.

As an initial matter, Hawkins Washington challenges the admissibility of Rakestraw's statement, arguing that it is not admissible under the Federal Rules of Evidence, particularly Fed. R. Evid. 807, the catch all exception to the hearsay rule.

---

[1]Hawkins Washington's position is taken from her brief and Exhibit 3 to her motion, which is a handwritten statement by her.  Apparently, for reasons that are not entirely clear, Hawkins Washington was not deposed in this case nor did she submit an affidavit.

14

This position is curious because Hawkins Washington included Rakestraw's statement as an exhibit to her motion (Exhibit 5).  In any event, the arguments as to its admissibility center on the fact that Rakestraw is now deceased.  Having reviewed the parties' positions, no useful purpose will be served by delving into the intricacies of the hearsay rule.  Suffice it to say that, Rakestraw's statement is admissible.  Any inconsistencies in her recollection - she was the only one to affirmatively state that she saw Hawkins Washington "push" Destini - with that of the other witnesses does not render her statement inadmissible.

Going back to whether the shock the conscience standard is met, viewing the evidence in a light most favorable to plaintiff, a reasonable juror could find that Hawkins Washington's actions did rise to this level.  Verbally abusing and pushing a disabled child in the manner alleged which caused Destini to fall and have a seizure could be viewed as shocking the conscience, and going beyond mere careless and unwise behavior.[2]  See Webb, 828 F.2d at 1154, 1159 (allegation that high school principal broke down a student's door, threw the student into a wall, threw her onto the floor, and slapped her sufficient to survive summary judgment).

_____

[2]At oral argument, defense counsel attention to the case of Ellis v. Cleveland Municipal School Dist., 455 F.3d 690 (6th Cir. 2006), to support the argument that Hawkins Washington's conduct does not rise to the level of a due process violation.  A careful review of Ellis shows that the case is not analogous.  In Ellis, the Court of Appeals for the Sixth Circuit was reviewing the district court's decision to grant judgment as a matter of law in favor of the school district on a claim of failure to train or supervise.  Thus, it cannot be said to support summary judgment on plaintiff's claim against Hawkins Washington.  Second, in affirming the district court, the Sixth Circuit assumed that the actions in question–grabbing a student, slamming her head into a chalkboard, and choking her, which resulting in physical injuries to the student's neck, headaches and nightmares consistent with post-traumatic stress disorder–"were shocking to the conscience."  Ellis, 455 F.3d at 700.

c.

With respect to causation, the Court, as noted above, required plaintiff to focus on this element in responding to the summary judgment motions.  In response, plaintiff submitted the reports of Biostatician and Epidemiologist Dr. Susan Shott, Neurologist Dr. Gary Trock, and Pathologist Dr. Werner Spitz.  All of them opine on the causation issue.  Essentially, they conclude that Destini had a seizure disorder and that the verbal abuse and fall, and subsequent seizure, could be proximately related to her death four days later.  Her death falls into the category of Sudden Unexpected Death in Epilepsy (SUDEP) where death can occur after stressful events which led to a seizure, often days after the stressful event and seizure.

Hawkins Washington argues that these reports should not be considered because they are the subject of a pending motion for sanctions on the grounds that plaintiff has no expert on causation (Doc. 17).  She also says the expert reports are untimely and should not be considered.  Neither argument carries the day.  The Court stayed proceedings on the motion for sanctions pending resolution of the summary judgment motions.  While plaintiff obtained experts at a late date, Hawkins Washington is not prejudiced because she has been given an opportunity to engage in discovery with these experts.  Finally, Hawkins Washington is mistaken in asserting that the expert reports fails to establish causation.  They appear to do precisely that.  Whether, however, it was reasonably foreseeable that Destini could later pass away following the incident is another matter, which likely creates a factual question not appropriate for summary judgment.

16

2.  State Law Claims - Assault and Battery, Gross Negligence, Intentional Infliction of Emotional Distress, Wrongful Death

a.

The common law tort of assault requires a showing of an "intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." Espinoza v. Thomas, 189 Mich. App. 110, 119 (1991), citing Tinkler v. Richter, 295 Mich. 396, 401 (1940).  The tort of battery denotes a "wilful and harmful or offensive touching of another person which results from an act intended to cause such a contact." Id

Here, the record shows that Hawkins Washington verbally abused Destini and pushed her, causing her to fall.  Thus, plaintiff has come forth with evidence establishing the elements of an assault and battery.  Summary judgment is not warranted.

b.

Plaintiff's claim for gross negligence is found under the government tort liability act, M.C.L. § 691.1401 et seq, which states in pertinent part:

> Each ... employee of a governmental agency ... shall be immune from tort liability for injuries to persons or damages to property caused by the ... employee ... while in the course of employment ... while acting on behalf of a governmental agency if all of the following are met:
>
> (a) The ... employee ... is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> (c) The ... employee's ... conduct does not amount to gross negligence that is the proximate cause of the injury or damage.  As used in this subdivision, "gross

17

negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results. [MCL 691.1407(2); MSA 3.996(107)(2).]

There seems no question that (a) and (b) are met in both of these cases. As to subsection (c), Hawkins Washington argues that plaintiff cannot show proximate case or that her conduct rose to the level of gross negligence. The Michigan Supreme Court has held that proximate cause means "the one most immediate, efficient, and direct cause preceding an injury. Robinson v. City of Detroit, 462 Mich. 439, 459 (2000). Based on plaintiff's medical reports, there appears to be a genuine issue of material fact as to causation. The same is true as to whether Hawkins Washington's conduct rose to the level of gross negligence. As such, summary judgment is not warranted based on these arguments.

Hawkins Washington's argument, that plaintiff's gross negligence claim is subsumed into her assault and batter claim, may have merit. "Michigan 'has rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence.' " Miller v. Sanilac County, 606 F.3d 240, 254 (6th Cir. 2010) (quoting VanVorous v. Burmeister, 262 Mich. App. 467, 687 N.W.2d 132, 143 (2004)). In VanVorous, the plaintiff's gross negligence claim was based on her allegation that the defendants "breached the duty of care they owed to Mr. VanVorous by utilizing excessive force to subdue or control Mr. VanVorous." Id. at 143. The court determined that the plaintiff's claim of gross negligence was "fully premised on her claim of excessive force," and accordingly granted summary disposition in favor of the defendants because Michigan courts reject "attempts to transform claims involving elements of intentional torts into claims of gross negligence." Id.

Here, it is not clear from the complaint whether plaintiff's allegations of gross

18

negligence are independent and distinct from her allegations of assault and battery, and therefore do not fall within the rule set forth in VanVorous.  The complaint is simply too bare bones to make a determination.  See Complaint at ¶ 45-49.  Moreover, plaintiff has not responded to this argument.  Rather, she simply argues that Hawkins Washington's actions raise a jury question on gross negligence.  The Court will deny summary judgment on this ground without prejudice.

Plaintiff shall file a paper within 15 fifteen days, explaining in detail the allegations which form the basis of this claim against Hawkins Washington independent of the assault and battery claim.  The Court will reconsider this argument following receipt of plaintiff's paper.

c.

As to plaintiff's intentional infliction of emotional distress claim, although the Michigan Supreme Court "has not officially recognized" intentional infliction of emotional distress as a tort, but "[a]ssuming that the cause is valid," a plaintiff must show "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress."  Vanvorous v. Burmeister, 262 Mich. App. 467 (2004) (internal quotation marks and citations omitted).  "Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."  Garretson v. City of Madison Heights, 407 F.3d 789, 799 (6th Cir.2005) (internal quotation marks and citation omitted).

Here, viewing the evidence in the light most favorable to plaintiff, a reasonable

19

juror could find that verbally abusing and pushing a disabled child causing her to fall and

suffer a seizure, absent any provocation, is "utterly intolerable in a civilized community."

Thus, summary judgment is not appropriate on this claim.

d.

Finally, as to plaintiff's wrongful death claim, M.C.L. § 600.2922(1) provides:

> (1) Whenever the death of a person , injuries resulting in death, or death as
> described in section 2922a . . . shall be caused by wrongful act, neglect, or fault
> of another, and the act, neglect, or fault is such as would, if death had not
> ensued, have entitled the party injured to maintain an action and recover
> damages, the person who or the corporation that would have been liable, if death
> had not ensued, shall be liable to an action for damages, notwithstanding the
> death of the person injured or death as described in section 2922a, and although
> the death was caused under circumstances that constitute a felony.

Hawkins Washington argues that summary judgment is appropriate because causation

is lacking.  As explained above, causation is a factual dispute based on this record.

Summary judgment is therefore not warranted on this claim.

V.  Conclusion

For the reasons stated above, Artt's motion for summary judgment is GRANTED.

Hawkins Washington's motion for summary judgment is DENIED.

Plaintiff shall file a paper within 15 days detailing the allegations which form the

basis of her gross negligence claim independent of her gross negligence claim.

SO ORDERED.

Dated:  February 2, 2011                     S/Avern Cohn
                                             AVERN COHN
                                             UNITED STATES DISTRICT JUDGE

20

09-13799
Shinn v. DPS, et al
Memorandum & Order

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, February 2, 2011, by electronic and/or ordinary mail.

 S/Julie Owens
Case Manager, (313) 234-5160